Filed 4/13/23  Reyes v. Kutnerian CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ENRIQUE REYES et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>VEREZH KUTNERIAN et al.,<br><br>Defendants and Respondents. | F083644<br><br>(Super. Ct. No. 20CECG03470)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

James A. Michel for Plaintiffs and Appellants.

Gregory L. Altounian; Michael Carrigan for Defendants and Respondents.

-ooOoo-

Plaintiffs Enrique and Guadalupe Reyes and their attorney James Michel appeal from an October 12, 2021 order of the Fresno County Superior Court entered in favor of

defendant Kutnerian Enterprises.[1]  In said order, the court dismissed as frivolous the Reyeses' action "to vacate void judgments" (capitalization omitted) and instructed the Reyeses and Michel to pay the $17,852.31 in attorney's fees incurred by Kutnerian Enterprises pursuant to Code of Civil Procedure section 128.5, subdivision (a).[2]  On appeal, the Reyeses and Michel challenge the dismissal and the attorney's fee award.  For the reasons set forth below, we affirm the order.[3]  Furthermore, we deny Kutnerian Enterprises' motion for sanctions pursuant to section 907.

**FACTUAL AND PROCEDURAL HISTORY**

Starting in or around March 2010, the Reyeses rented the upper portion of a land parcel from Kutnerian Enterprises under an oral lease.  In May 2013, the parties entered into a one-year written lease.  This lease expired on April 30, 2014 and became a month-to-month tenancy.  In January 2015, Kutnerian Enterprises served the Reyeses with a 30-day notice of termination of tenancy.  The Reyeses did not vacate the property.

**I.      Prior Litigation**

   *a.  Case No. 15CECL01766*

On March 6, 2015, Kutnerian Enterprises filed an unlawful detainer complaint.  Proceeding in propria persona, the Reyeses moved to quash service of summons.  That motion was denied.  In a subsequent demurrer, the Reyeses asserted that they should have

---

[1]      Kutnerian Enterprises, three of its partners (the estate of Migran Kutnerian, Ovanes Kutnerian, and Vrezh Kutnerian), and the trustee of the Migran Kutnerian Trust (Arman Asatrian) were named as defendants.  For brevity, we refer to defendants collectively as Kutnerian Enterprises.

[2]      Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

[3]      The Reyeses filed a motion for judicial notice on April 6, 2022 as well as a motion to augment the record and a second motion for judicial notice on May 11, 2022. Kutnerian Enterprises filed its own motion for judicial notice on July 19, 2022.  We deferred our rulings pending consideration of the appeal on its merits.  Having done so, we now (1) deny the Reyeses' motions for judicial notice; (2) grant the Reyeses' motion to augment the record; and (3) grant Kutnerian Enterprises' motion for judicial notice.

2.

received a 60-day notice because (1) pursuant to Civil Code section 1946.1, their tenancy exceeded one year; and (2) pursuant to Civil Code section 798.55, they were mobilehome park tenants. Trial was set for April 21, 2015 and the Reyeses' attempts to vacate this date were unsuccessful.

At the outset of trial, the superior court informed the Reyeses that it read their demurrer and would consider anything raised therein as a defense. During trial, there was no dispute that the Reyeses resided in a trailer. The testimony of David Bernel, who rented the lower portion of Kutnerian Enterprises' parcel, indicated that he lived in a "house" or "home." During closing arguments, the Reyeses reiterated that they were mobilehome park tenants and entitled to a 60-day notice. Kutnerian Enterprises countered that the property was not a mobilehome park.

In an oral statement of decision, the court ruled that the 30-day notice given was sufficient and the Reyeses were not entitled to a 60-day notice pursuant to Civil Code section 1946.1. It did not expressly resolve the mobilehome park argument. The court awarded possession of the property to Kutnerian Enterprises and entered judgment in favor thereof. As a result, a hearing on the Reyeses' demurrer scheduled for April 27, 2015 was taken off calendar as moot. On May 6, 2015, the Reyeses were evicted.

On May 15, 2015, the Reyeses appealed to the appellate division of the superior court. Among other things, they contended "that they should have been served with a 60-day notice of termination of the tenancy because the premises was a mobilehome in a mobilehome park." In an opinion filed December 2, 2015, the appellate division affirmed the judgment. It explained:

> "Appellants have cited to no evidence in the record of proceedings supporting their contention that the lot they rented was in a mobilehome park entitling them to 60 days' notice of termination of the tenancy. If error on this point appeared anywhere in the record on appeal, it was incumbent on appellants to refer the appellate panel to the portion of the record supporting their contentions on appeal. [Citation.] Appellants had the burden of overcoming the presumption of correctness and had the

3.

burden to provide an adequate record on the issue, requiring the appellate panel to resolve this issue against them.  [Citation.]  There is no error on the face of the complaint that would require the appellate panel to determine that the motion to quash was improperly denied because the premises was located in a mobilehome park.  [Citation.]"

On January 21, 2016, the Reyeses petitioned the Fifth District Court of Appeal for "a writ of certiorari to overturn a ruling on appeal which sustained an unlawful detainer judgment against [them]."  On February 8, 2016, we summarily denied the petition.

b.  *Case No. 15CECG00659*

Before the unlawful detainer complaint was filed, the Reyeses—proceeding in propria persona—sued Kutnerian Enterprises.  They alleged elder abuse, utility cutoff in violation of Civil Code section 789.3, breach of the covenant of quiet enjoyment, negligence, nuisance, breach of the implied warranty of habitability, intentional infliction of emotional distress, and retaliatory eviction.  The superior court sustained Kutnerian Enterprises' general demurrer to the elder abuse and breach of the implied warranty of habitability causes of action without leave to amend.  Kutnerian Enterprises then moved for summary judgment on the remaining causes of action, which were based on claims that it "cut off and refused to restore electricity to [the Reyeses'] travel trailer," it "failed to give [the Reyeses] proper notice of the termination of their tenancy," and its "eviction of [the Reyeses] was retaliatory."  Kutnerian Enterprises relied upon "the preclusive effect of the final judgment and findings in the [earlier] unlawful detainer action," which concluded that Kutnerian Enterprises "had no obligation to provide electrical service to [the Reyeses] and was not responsible for termination of electrical service to [the Reyeses]," it "gave [the Reyeses] proper notice of termination of tenancy," and the "eviction was not retaliatory."  The court granted the motion on collateral estoppel grounds and dismissed the Reyeses' complaint.

On appeal to the Fifth District Court of Appeal, the Reyeses—represented by Michel—argued that "the trial court erred in granting summary judgment because …

4.

there exist triable issues of fact." In an opinion filed November 22, 2017, we affirmed the judgment. We stated:

> "Appellants base their theories of liability on three alleged wrongs committed by Kutnerian [Enterprises]. According to appellants, Kutnerian [Enterprises] wrongly cut off and refused to restore the electricity to their trailer, failed to give appellants proper notice of termination of the tenancy, and evicted appellants in retaliation for appellants' small claims action.

> "Appellants assert the trial court erred in granting summary judgment because disputed factual issues related to the alleged wrongs still exist. Appellants argue it still must be determined whether Kutnerian [Enterprises] was responsible for the electricity cut off; whether Kutnerian [Enterprises] was obligated to provide or restore electricity to appellants; and whether Kutnerian [Enterprises'] eviction of appellants was retaliatory.

> "However, appellants raised these alleged wrongs as defenses in the unlawful detainer action and the issues were decided against them. The trial court in the unlawful detainer action ruled that Kutnerian [Enterprises] gave proper notice of termination of the tenancy to appellants. The court further found that Kutnerian [Enterprises] was not the one who cut off the electricity and, under the lease, Kutnerian [Enterprises] was not obligated to provide electricity to appellants. Rather, appellants were responsible for providing their own water and electricity. Finally, the court ruled that the eviction was not retaliatory. The appellate department of the superior court affirmed this decision on appeal.

> "Therefore, the parties litigated, and the trial court decided, the issues supporting appellants' theories of liability. Thus, appellants cannot relitigate those issues. Rather, the unlawful detainer judgment conclusively resolved those issues against appellants. Accordingly, the trial court properly granted summary judgment based on issue preclusion."

*c. Bankruptcy proceedings*

On April 8, 2018, the Reyeses—represented by Michel—filed for Chapter 13 bankruptcy. In federal bankruptcy court, they moved to vacate the unlawful detainer judgment, arguing said judgment was void because Kutnerian Enterprises knew that they had to give a 60-day notice of termination of tenancy pursuant to Civil Code section 798.55 but defrauded them as well as the state superior court. Kutnerian Enterprises

5.

opposed the motion on the basis that the notice issue had already been decided by the state courts. Citing the *Rooker-Feldman* doctrine,[4] the bankruptcy court denied the motion.

In a memorandum filed April 19, 2019, the Bankruptcy Appellate Panel of the Ninth Circuit affirmed the order dismissing the Reyeses' vacation motion. It reasoned:

> "… [T]he Reyeses argue: (1) they were never served with the 30-day Notice as Kutnerian [Enterprises] told the [unlawful detainer] court; (2) they should have received a 60-day notice from Kutnerian [Enterprises] under California law; and (3) because they did not receive proper notice of the [unlawful detainer] summons and complaint, the [unlawful detainer] court was without jurisdiction to hear the action or award relief.…
> [¶] … [¶]
>
> "… [C]ontrary to their argument, all of these issues were litigated before, and rejected by, the California courts. Since the [unlawful detainer] court entered the judgment, it implicitly found against the Reyeses on their argument that they failed to receive the 30-day Notice. The [unlawful detainer] court expressly ruled against them regarding the necessity for a 60-day notice to quit [under Civil Code section 1946.1]. As for the mobile home park issue, that was raised in the Reyeses' demurrer, which the [unlawful detainer] court reviewed, and Mr. Reyes raised it again in closing argument at the [unlawful detainer] trial. The [unlawful detainer] court did not discuss this issue in its oral statement of decision, but it apparently ruled against them on that. The Reyeses raised all of these issues again on appeal, but the appellate division affirmed, expressly finding that a 30-day notice was sufficient, that Kutnerian [Enterprises] provided such notice, and that the Reyeses had failed to establish that the property was a mobile home park entitling them to a 60-day notice to quit. That decision is final. The Reyeses also raised the notice issue in their lawsuit against Kutnerian [Enterprises] before the California superior court, which ruled against them, and the California Court of Appeal affirmed. That decision is also final.

---

[4] " '[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.' [Citation.]" (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1187, fn. 7; see *District of Columbia Court of Appeals v. Feldman* (1983) 460 U.S. 462; *Rooker v. Fidelity Trust Co.* (1923) 263 U.S. 413.)

6.

"Ultimately, the California courts ruled that only a 30-day notice was required and that Kutnerian [Enterprises] provided it.…  Since the 30-day Notice was proper and the Reyeses were served with it, the [unlawful detainer] court had jurisdiction, both over the subject matter and over the Reyeses."

The panel's judgment was subsequently affirmed by the Ninth Circuit.

### d.  Case No. 18CECG00202

In 2018, the Reyeses—proceeding in propria persona—filed another lawsuit against Kutnerian Enterprises.  They alleged elder abuse, elder financial abuse, breach of contract, breach of quiet possession, breach of the implied covenant of good faith and fair dealing, nuisance, and negligent infliction of emotional distress.  The Reyeses again argued that Kutnerian Enterprises' "service of a Thirty Day (30) Notice of Termination was in violation of Civil Code Section[s] 1946.1 and 798.55 requiring a Sixty Day (60) Notice of Termination for tenancies over one year for mobile home tenancies." Kutnerian Enterprises demurred to the entire complaint and moved to declare the Reyeses vexatious litigants pursuant to section 391.  In an order entered January 10, 2019, the superior court sustained the demurrer without leave to amend and granted the vexatious litigant motion.  It explained:

"Plaintiffs previously filed a nearly identical complaint in 2015 .… [¶] … [¶]  However, plaintiffs lost their 2015 case .…  The trial court sustained a demurrer without leave to amend as to their elder abuse and breach of implied warranty of habitability claims, and later granted summary judgment as to the remaining causes of action against Kutnerian [Enterprises] based on the collateral estoppel effect of the underlying unlawful detainer judgment.  The Court of Appeal affirmed the trial court's orders on appeal.…

"Thus, plaintiffs' present claims against defendant have already been resolved in the prior action, and the judgment entered against it in that case has been affirmed on appeal.  Consequently, plaintiffs' claims are now barred by the doctrine of res judicata.  [¶] … [¶]

"… [I]n the present case, plaintiffs have engaged in repeated attempts to relitigate the same cause of action, claim, controversy, or issues of fact or law.  They originally sought to raise their claims in the underlying

7.

unlawful detainer action, and the trial court found against them in that action. [Citation.] They then appealed the unlawful detainer judgment to the Appellate Division of the Fresno County Superior Court, where they lost again. Plaintiffs' appeal attempted to challenge the validity of the unlawful detainer judgment based on the same theories alleged in the present case.… Plaintiffs then sought to challenge the decision by filing a writ petition with the [Fifth District Court of Appeal], which was summarily denied.… [¶] … [¶]

"Next, plaintiffs filed an action against Kutnerian [Enterprises] … in 2015. [Citation.] The trial court dismissed some of plaintiffs' claims against Kutnerian [Enterprises] on demurrer, and dismissed the rest after a summary judgment motion.… Plaintiffs appealed …, which … resulted in affirmance[] of the underlying decision[].… Thus, plaintiffs' claims, which arose out of the same facts and theories as the present action, were finally determined adversely to them in the 2015 action.

"Undeterred, plaintiffs have now filed another action in the Fresno County Superior Court, which arises out of the same basic facts and theories as the 2015 litigation, and which seeks to overturn the judgment in the unlawful detainer action. In the meantime, after filing the present case, plaintiffs also filed a bankruptcy petition which, among other things, sought to declare the judgment in the unlawful [detainer] action void.

"Thus, plaintiffs have clearly made repeated attempts to relitigate the same claims, controversies, and issues in multiple different cases and venues over the past several years. All of their cases arise out of the same set of facts, namely … Kutnerian [Enterprises'] eviction of them from the property. The 2015 case and the present case also allege many of the same legal theories, and involve the same parties, or people in privity with them. Including the multiple appeals and writ petitions filed in the various cases, there are more than three attempts to relitigate the same claims and issues. Even the bankruptcy petition filed by plaintiffs appears to be, at least in part, an attempt to relitigate the same issues, since plaintiffs admit they are using the bankruptcy case to have the unlawful detainer judgment declared void."

## II.   Current Litigation (Case No. 20CECG03470)

On November 30, 2020, the Reyeses—represented by Michel—filed a "COMPLAINT FOR EQUITABLE RELIEF TO VACATE VOID JUDGMENTS" against Kutnerian Enterprises. They contended: (1) "[t]he unlawful detainer judgment

8.

which [Kutnerian Enterprises] obtained in Fresno County Superior Court, Case Number 15 CE CL 01766, is void for lack of subject matter jurisdiction"; and (2) the judgments in favor of Kutnerian Enterprises "in Case Number 15 CE CG 00659" and "in Case Number CE CG 00202" "must be vacated and set aside as void accordingly" because they were "based on the premise that the unlawful detainer judgment in Case Number 15 CE CL 01766 precluded the subsequent claims of Plaintiffs REYES." The Reyeses maintained that "California Civil Code Section 798.55 required that a minimum of 60 days notice be used to terminate [their] tenancy" and "Kutnerian [Enterprises'] failure to serve the requisite 60-day notice never conferred the special jurisdiction for unlawful detainer upon the court."

On February 18, 2021, Kutnerian Enterprises filed a motion to strike the Reyeses' action as a strategic lawsuit against public participation (SLAPP) pursuant to section 425.16, subdivision (a). Following an August 18, 2021 hearing, the superior court denied the motion because "the gravamen of [the Reyeses'] lawsuit does not fall within the purview of … section 425.15."[5] The court also issued—"pursuant to … section 128.5, subdivision (a)"—an order to show cause (OSC) why the lawsuit should not be dismissed as frivolous; advised the parties that it would also consider "imposing sanctions in the form of attorneys' fees upon [the Reyeses] and their attorney for filing of a 'frivolous' lawsuit"; and instructed Kutnerian Enterprises to "file and serve their documentation in support of any attorneys' fees no later than August 23, 2021." The ruling was served by mail August 20, 2021.

---

[5] In the alternative, the court denied Kutnerian Enterprises' motion because "an action seeking equitable relief from a void judgment is a legally recognized means of collateral attack and thus, exempt from the doctrine of res judicata." However, in its order filed October 12, 2021, the court acknowledged that "an independent action in equity to set aside a void judgment" "is brought to nullify the judgment" and "is not a collateral attack."

9.

Counsel for Kutnerian Enterprises filed a declaration on August 20, 2021, which (1) itemized the $11,520 in attorney's fees and $2,372.31 in costs incurred by Kutnerian Enterprises; (2) asked the court to "impos[e] sanctions against [the Reyeses] and their attorney and in favor of [Kutnerian Enterprises] in the form of attorneys' fees totaling $11,520.00"; and (3) asked the court to "award [Kutnerian Enterprises] their costs totaling $2,372.31." In another declaration filed September 3, 2021, counsel for Kutnerian Enterprises advised that Kutnerian Enterprises incurred an additional $3,960 in attorney's fees related to the preparation of a response to the Reyeses' opposition to the OSC. A hearing on the OSC was held on September 16, 2021.

In an order filed October 12, 2021, the superior court dismissed the case with prejudice, imposed $17,852.31 in "sanctions" (boldface & underlining omitted) against the Reyeses and Michel pursuant to section 128.5, and entered a prefiling order. It reasoned:

> "Here, plaintiffs have been arguing and litigating whether a 60-day notice was required to terminate their tenancy for over six years. It was raised via demurrer in the unlawful detainer action. [Citation.] The issue was then placed before every trial court in every case filed since including the bankruptcy court. [Citations.] No court found the argument persuasive in plaintiffs' efforts to overturn the unlawful detainer judgment or the judgments entered in the subsequent litigation. This steadfast refusal to accept the rulings of not only the trial courts but the appellate courts constitutes 'deliberate and egregious misconduct' sufficient to support dismissal. [Citation.] The fact that this action was filed by an attorney is of no consequence when it is nothing more than another 'spin' of the 'inadequate notice wheel.' [Citation.] Case No. 20CECG03470 is dismissed with prejudice. [¶] … [¶]
>
> "Here, plaintiffs and their counsel continue to insist that their mobilehome (aka a 'travel trailer') was situated in a 'mobilehome park' at the time of the unlawful detainer action such that a 60-day notice pursuant to Civil Code section 798.55, subdivision (b)(1), was required. As stated above, the steadfast refusal to accept the rulings of not only the trial courts but the appellate courts constitutes 'deliberate and egregious misconduct.' Plaintiffs' counsel has argued this is a 'novel' issue and should be decided.

10.

But plaintiffs were evicted from the property.  [Citation.]  After six years, the 'novel' issue is moot.  [Citation.]  Pursuing the point at this stage is academic.

"The repeated litigation of this issue constitutes both 'frivolous' and 'bad faith' litigation subjecting plaintiffs and their attorney to sanctions.  Plaintiffs' counsel may argue that he only filed the case at bench, therefore sanctions against him are unwarranted.  However, it is significant that he has been involved in some of the appeals of the cases listed above.  He is clearly responsible for the persistent presentation of the frivolous arguments as discussed above.  Accordingly, he should be sanctioned as well."

## DISCUSSION

### I. Dismissal of Action as Frivolous

"A court has inherent power, upon a sufficient factual showing, to dismiss an action ' "shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process." ' [Citation.]" (*Flores v. Georgeson* (2011) 191 Cal.App.4th 881, 887; see *Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1271 ["Courts have the inherent authority to dismiss a case as a sanction."]; *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799 ["Trial courts should only exercise this authority in extreme situations, such as when the conduct was clear and deliberate, where no lesser alternatives would remedy the situation [citation], the fault lies with the client and not the attorney [citation], and when the court issues a directive that the party fails to obey."].)  "The inherent power to dismiss … is a discretionary power." (*Guardianship of A.H.* (2022) 83 Cal.App.5th 155, 162; see *Crowley v. Modern Faucet Manufacturing Co.* (1955) 44 Cal.2d 321, 324.)

" 'Generally, where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the proper decision for that of the trial judge.  The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice.  [Citations.]' [Citation.]" (*Brawley v. J.C.*

11.

*Interiors, Inc.* (2008) 161 Cal.App.4th 1126, 1137.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can be reasonably deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*Ibid.*)  "We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it." (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 765 (*Slesinger*).)

"Unlawful detainer actions are authorized and governed by state statute." (*Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297, citing § 1161 et seq.)  The statutory scheme sets forth "the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.)  "Given the need for quick, peaceful resolutions of unlawful detainer actions, the statutory procedures must be strictly adhered to, including the stringent requirements for service, notice, and filing deadlines." (*Id.* at pp. 394–395, fn. omitted.)

"A tenant may defend against an unlawful detainer action by asserting that the lessor has not provided proper notice of termination, as required by statute." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1117.)  Generally, "as a prerequisite to filing an unlawful detainer action based on a terminated month-to-month tenancy, the landlord must serve the tenant with a 30-day written notice of termination." (*Losornio v. Motta* (1998) 67 Cal.App.4th 110, 113; see § 1161, subd. 1; Civ. Code, §§ 1945, 1946; *Renner v. Huntington-Hawthorne Oil & Gas Co.* (1952) 39 Cal.2d 93, 102.)  "In 1978, the Legislature enacted the Mobilehome Residency Law[6] (MRL), which extensively regulates the landlord-tenant relationship between mobilehome park owners and residents.  The MRL recognizes that, unlike other renters, mobilehome

---

**6**     Civil Code section 798 et seq.

owners cannot easily relocate if their tenancies are terminated." (*Greening v. Johnson* (1997) 53 Cal.App.4th 1223, 1226; see Civ. Code, § 798.55, subd. (a).) " '[I]t is apparent that the Legislature intended to make it very clear that mobile home tenancies are different from the ordinary tenancy and that landlord-tenant relations involving mobile homes are to be treated differently ….' " (*Greening v. Johnson*, *supra*, at p. 1226, quoting *Palmer v. Agee* (1978) 87 Cal.App.3d 377, 384.) For instance, termination of a mobilehome tenancy is "contingent on a 60-day notice." (*Palmer v. Agee*, *supra*, at p. 384.) Subdivision (b)(1) of Civil Code section 798.55 reads:

> "The management may not terminate or refuse to renew a tenancy, except for a reason specified in this article and upon the giving of written notice to the homeowner, in the manner prescribed by Section 1162 of the Code of Civil Procedure, to sell or remove, at the homeowner's election, the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice." (Civ. Code, § 798.55, subd. (b)(1).)

A "park" refers to "a mobilehome park" (Civ. Code, § 798.6), i.e., "an area of land where two or more mobilehome sites are rented, or held out for rent, to accommodate mobilehomes used for human habitation" (Civ. Code, § 798.4).

Here, in the unlawful detainer action, the Reyeses alleged in their demurrer that they were mobilehome park tenants entitled to a 60-day notice of termination pursuant to Civil Code section 798.55. They were advised by the superior court that anything raised in their demurrer would be considered as a defense at trial. During said trial, there was no question that the Reyeses resided in a trailer, which could satisfy the definition of a "mobilehome." (See Civ. Code, § 798.3, subd. (b).) As for whether Kutnerian Enterprises' parcel constituted a "[m]obilehome park" "where two or more mobilehome sites are rented" (Civ. Code, § 798.4), the evidence showed that Bernel—who leased the lower portion of Kutnerian Enterprises' parcel—lived in a "house" or "home." The Reyeses did not elicit more specific testimony nor did they furnish additional evidence on the matter, but they still argued in summation that they were mobilehome park tenants.

Ultimately, the court ruled that the 30-day notice given was sufficient. It did not make an express finding on the mobilehome park issue, but this alone is not fatal. (See, e.g., *Slesinger*, *supra*, 155 Cal.App.4th at p. 768.) On appeal to the appellate division of the superior court, the Reyeses restated that they were mobilehome park tenants entitled to a 60-day notice of termination pursuant to Civil Code section 798.55. The appellate division unequivocally rejected this contention, pronouncing that the Reyeses "cited to no evidence in the record of proceedings supporting their contention that the lot they rented was in a mobilehome park entitling them to 60 days' notice of termination of the tenancy."

Notwithstanding the aforementioned determination, in subsequent state and federal court proceedings, the Reyeses—either proceeding in propria persona or represented by Michel—routinely invoked Civil Code section 798.55. Citing the preclusive effect of the final judgment in the unlawful detainer action, the courts unvaryingly ruled against the Reyeses. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 ["Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings."].) On one occasion (Case No. 18CECG00202), the state court granted Kutnerian Enterprises' vexatious litigant motion. In the instant case, the Reyeses— represented by Michel—once again invoked Civil Code section 798.55. The superior court dismissed the action, observing that the Reyeses "have been arguing and litigating whether a 60-day notice was required to terminate their tenancy for over six years" "in … efforts to overturn the unlawful detainer judgment or the judgments entered in the subsequent litigation" and deeming their "steadfast refusal to accept the rulings of not only the trial courts but [also] the appellate courts [as] constitut[ing] 'deliberate and egregious misconduct' sufficient to support dismissal." Where "[the] plaintiff[s] w[ere] in fact seeking to relitigate the precise issue that was finally adjudicated against [them] in [a] former action, the trial court properly exercised its power to stop vexatious litigation, clearly without merit, and burdensome to the courts as well as to [the] defendants."

14.

(*Crowley v. Modern Faucet Manufacturing Co.*, *supra*, 44 Cal.2d at pp. 324–325.) Hence, we conclude that the court's dismissal did not fall outside the bounds of reason.

On appeal, the Reyeses correctly point out that "the court's inherent power may only be exercised to the extent not inconsistent with the federal or state Constitutions, or California statutory law." (See *Slesinger*, *supra*, 155 Cal.App.4th at p. 762.) They then contend that section 430.80[7] "affords [them] a statutory right to not waive or forfeit the subject matter jurisdiction argument even if not asserted in previous litigation." In other words, because the Reyeses purportedly "exercise[d] … a California statutory right to assert a lack of subject matter jurisdiction" (boldface & some capitalization omitted), "the trial court had the duty to rule on [their] jurisdictional challenge to the unlawful detainer judgment" (boldface & capitalization omitted). The issue is whether the unlawful detainer law's notice requirement implicates subject matter jurisdiction. We do not believe so.

" 'Jurisdiction' refers to 'a court's adjudicatory authority.' [Citation.] Accordingly, the term 'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority. [Citations.]" (*Reed Elsevier, Inc. v. Muchnick* (2010) 559 U.S. 154, 160–161.) "Here we are concerned with jurisdiction in what we typically refer to as its 'fundamental sense': specifically, the power of the court over the subject matter of the case. [Citations.] A lack of fundamental jurisdiction is the ' " ' "entire absence of power to hear or determine the case." ' " ' [Citation.]" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 (*Quigley*).) "[A]ny judgment or order

---

[7] "If the party against whom a complaint or cross-complaint has been filed fails to object to the pleading, either by demurrer or answer, that party is deemed to have waived the objection unless it is an objection that the court has no jurisdiction of the subject of the cause of action alleged in the pleading or an objection that the pleading does not state facts sufficient to constitute a cause of action." (§ 430.80, subd. (a).)

15.

rendered by a court lacking subject matter jurisdiction is 'void on its face ….'

[Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.)

"Because it concerns the basic power of a court to act, the parties to a case cannot confer

fundamental jurisdiction upon a court by waiver, estoppel, consent, or forfeiture."

(*Quigley*, *supra*, at p. 807.)

We presume that "statutes do not limit the courts' fundamental jurisdiction absent

a clear indication of legislative intent to do so.  [Citation.]  California's superior courts

are courts of general jurisdiction, which means they are generally empowered to resolve

the legal disputes that are brought to them.  [Citations.]" (*Quigley*, *supra*, 7 Cal.5th at

p. 808.)  "The power of the courts to resolve cases is the essential underpinning of the

judiciary's ability to ' "effectively … function as a separate department of government." '

[Citation.]  ' "Consequently an intent to defeat the exercise of the court's jurisdiction will

not be supplied by implication." ' [Citation.]  If the Legislature means to withdraw a

class of cases from state court jurisdiction, we expect it will make that intention clear.

[Citation.]" (*Ibid.*)

Here, under the pertinent statutory provisions, a written notice of termination is a

prerequisite to filing an unlawful detainer action.  (See § 1161, subd. 1; Civ. Code,

§§ 798.55, 1945, 1946.)  Nevertheless, "[n]othing in the language of th[ese] provision[s]

suggests [an intent] to withdraw a class of cases from the courts' power to adjudicate.

Unlike some other provisions that have been understood to have such an effect, [these

provisions] make[] no reference to the jurisdiction of the courts, nor [do they] otherwise

speak to the courts' power to decide a particular category of cases." (*Quigley*, *supra*, 7

Cal.5th at p. 808; see *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 274

[jurisdictional statutes " 'speak to the power of the court rather than to the rights or

obligations of the parties' "]; cf. Pub. Util. Code, § 1759, subd. (a) ["No court of this

state, except the Supreme Court and the court of appeal, to the extent specified in this

article, shall have jurisdiction to review, reverse, correct, or annul any order or decision

of the [Public Utilities Commission] .…"]; Bus. & Prof. Code, § 6100 ["For any of the causes provided in this article, arising after an attorney's admission to practice, he or she may be disbarred or suspended by the Supreme Court."].)  The notice requirement is more accurately identified as "an element of an unlawful detainer cause of action that must be alleged and proven for the landlord to acquire possession."  (*Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 612–613; see, e.g., *Kruger v. Reyes* (2014) 232 Cal.App.4th Supp. 10, 16; CACI No. 4306.)  "[T]he fact that … notice must be 'allege[d] … and, if controverted, prove[n] [at] trial' does not transform the requirement into a jurisdictional prerequisite."  (*Borsuk v. Appellate Division of Superior Court*, *supra*, at p. 617; see *Reed Elsevier, Inc. v. Muchnick*, *supra*, 559 U.S. at p. 161 ["Courts … have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations .…"]; cf. *Arbaugh v. Y & H Corp.* (2006) 546 U.S. 500, 511 [" 'Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination.' "].)

Furthermore, were we to indulge the Reyeses and broaden the scope of subject matter jurisdiction to encompass elements of causes of action, we would significantly undermine res judicata and eliminate the certainty and finality that the doctrine is designed to protect.  (See *Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 ["The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' "].)  We would also make subject matter jurisdiction contingent upon the actions of a party, contradicting the established

principle that parties cannot confer fundamental jurisdiction. (See *Quigley*, *supra*, 7 Cal.5th at p. 807.)[8]

## II. Attorney's Fees Under Section 128.5

"A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) "Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers or, on the court's own motion, after notice and opportunity to be heard." (*Id.*, subd. (c).) An action or tactic is frivolous if it is "totally and completely without merit or for the sole purpose of harassing an opposing party." (*Id.*, subd. (b)(2); accord, *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 135 (*Taeb*); *Levy v. Blum* (2001) 92 Cal.App.4th 625, 635 (*Levy*).) "Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit." (*Levy*, *supra*, at p. 635; accord, *Taeb*, *supra*, at p. 135.) "There must also be a showing of an improper purpose, i.e., subjective bad faith on the part of the attorney or party to be sanctioned." (*Levy*, *supra*, at p. 635; see *id.* at p. 633 [actions taken in subjective bad faith lack " 'honest belief in the propriety or reasonableness of such actions' "]; see also *Taeb*, *supra*, at pp. 128, 134–135 [2017 amendments to § 128.5 confirmed subjective standard of bad faith].) "When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive." (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1505; see *Campbell v. Cal-Gard Surety Services, Inc.* (1998) 62 Cal.App.4th 563, 574 ["An evil

---

[8]     Since we reject the notion that the unlawful detainer law's notice requirement implicates subject matter jurisdiction, we necessarily reject any claims premised upon that notion.

18.

motive is not required; subjective bad faith may be inferred from the prosecution of a frivolous action."].)

"An order awarding attorneys' fees pursuant to section 128.5 … is reviewed under the abuse of discretion test." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) "A ruling amounts to an abuse of discretion when it exceeds the bounds of reason …." (*Ibid.*) "In reviewing the facts which led the trial court to impose sanctions, we must accept the version thereof which supports the trial court's determination, and must indulge in the inferences which favor its findings." (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 698.) "We do not independently determine whether appellant's conduct was frivolous or in bad faith, and we may not substitute our judgment for the judgment of the court below." (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1001.)

As outlined above, the Reyeses first claimed in the 2015 unlawful detainer action that they were mobilehome park tenants entitled to a 60-day notice of termination pursuant to Civil Code section 798.55. Although the superior court did not directly address this contention, the appellate division explicitly found that the Reyeses failed to cite supporting evidence. Yet, in numerous court proceedings thereafter, the Reyeses— either proceeding in propria persona or represented by Michel—continued to make the same argument. (See *Harris v. Rudin, Richman & Appel* (2002) 95 Cal.App.4th 1332, 1342–1344 [party repeatedly raised previously rejected claim].) One could reasonably conclude that this appeal filed in 2021 lacked merit (see *Taeb*, *supra*, 39 Cal.App.5th at p. 135; *Levy*, *supra*, 92 Cal.App.4th at p. 635) and infer that the Reyeses and Michel acted in subjective bad faith (*Campbell v. Cal-Gard Surety Services, Inc.*, *supra*, 62 Cal.App.4th at p. 574; *Dolan v. Buena Engineers, Inc.*, *supra*, 24 Cal.App.4th at p. 1505). Hence, we conclude that the court's award of attorney's fees did not fall outside the bounds of reason.

19.

On appeal, the Reyeses contend: (1) "a monetary sanction imposed after a court motion is limited to a penalty payable to the court and may not include or consist of monetary sanctions payable to a party"; and (2) the OSC "did not notify [them] that they would be subject to sanctions, unless within 21 days of service of the [OSC], the complaint was withdrawn." For both contentions, they rely on section 128.5, subdivision (f). This provision, however, is inapplicable. "Section 128.5 discusses attorney's fees in two separate areas of the statute. The first mention of attorney's fees under section 128.5 appears in subdivisions (a), and (c), which discuss 'expenses.' " (*Changsha Metro Group Co., Ltd. v. Xufeng* (2020) 57 Cal.App.5th 1, 8.) "The second mention of attorney's fees in section 128.5 appears in subdivision (f), which discusses 'sanctions.' " (*Ibid.*) The record here shows that the court—while using the term "sanctions" rather than "expenses"—employed the procedure set forth in section 128.5, subdivision (a). (See *Kinney v. Superior Court* (2022) 77 Cal.App.5th 168, 177 [appellate court indulges all intendments and presumptions in favor of the correctness of a lower court's judgment or order].)

## III. Section 907 Sanctions

"When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (§ 907; see Cal. Rules of Court, rule 8.276(a)(1).) In a "**MOTION FOR SANCTIONS**" filed July 19, 2022, Kutnerian Enterprises asked us for "an order awarding them monetary sanctions in the amount of **$23,280.00**, or such other amount deemed appropriate by the Court." We deferred our ruling pending consideration of the appeal on its merits. Having now done so, we deny the motion. (See *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194 ["Whether to impose appellate sanctions is a matter within our discretion."].)

20.

## <u>DISPOSITION</u>

The order is affirmed.  The motion for sanctions is denied.  Costs on appeal are awarded to defendant Kutnerian Enterprises.


                                                LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.